

**ArentFox Schiff LLP**

1301 Avenue of the Americas
42nd Floor
New York, NY  10019

| 212.484.3900 | **MAIN** |
| 212.484.3990 | **FAX** |

afslaw.com

December 7, 2022

VIA ECF

**Brittany H. Sokoloff**
Associate

212.745.9555   **DIRECT**

brittany.sokoloff@afslaw.com

Honorable Lorna B. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   Case No. 1:22-cv-08634 (LGS), 41-45 Property Owner, LLC v. CDM1, LLC,
>         Pre-Conference Letter

Dear Judge Schofield:

We represent Defendant and Counter-Plaintiff CDM1, LLC ("CDM1") in this case.  Pursuant to this Court's Individual Rules and Procedures, CDM1 submits this pre-motion letter in anticipation of filing a Rule 12(b)(6) motion to dismiss Plaintiff 41-45 Property Owner, LLC's (Sponsor) claim for breach of the implied covenant of good faith and fair dealing. (Compl., Doc. 17.)  The Initial Pretrial Telephone Conference is scheduled for December 21, 2022 at 4:10 p.m.

1. **Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing (Count II) Cannot Be Premised On The Same Facts As Its Claim for Breach Of Contract (Count I).**

In October 2017, CDM1 and Sponsor entered into an agreement for the purchase of apartment PH-58 at 520 Park Avenue, New York, New York (the "Option Agreement"), and CDM1 paid an $8.5 million deposit ("Premium Payment") pursuant to the Option Agreement.  Sponsor and CDM1 entered into Schedule D – Rider to Option Agreement (the "Rider"), which set forth certain modifications that CDM1 wanted made to PH-58.  About a month after entering into the Option Agreement, Sponsor and CDM1 entered into an Additional Rider to address modifications that CDM1 wanted made to the unit.  Notably, the changes in the Rider and the Additional Rider reduced the cost of constructing PH-58.  The deal never closed because Sponsor failed to comply with specifically-negotiated pre-closing obligations in Paragraph 17.3 of the Option Agreement.

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  A breach of the implied covenant of good faith and fair dealing should be dismissed as redundant with a breach of contract claim unless "it is based on allegations different than those underlying the accompanying breach of contract claim . . . and the relief sought . . . is [not] intrinsically tied to



the damages allegedly resulting from the breach of contract . . . . " *Cordell v. McGraw-Hill Companies, Inc.*, No. 12 CIV. 0637 ALC RLE, 2012 WL 5264844, at *4 (S.D.N.Y. Oct. 23, 2012) (internal quotation marks omitted), *aff'd*, 525 F. App'x 22 (2d Cir. 2013)

Sponsor's implied covenant claim is premised upon the same set of facts underlying the contract claim, namely, CDM1's alleged failure to close on the apartment. Plaintiff raises as a factual basis for its implied covenant claim (1) entry into the Rider and Additional Rider, (2) inclusion of Paragraph 17.3 of the Option Agreement, and (3) Sponsor's procurement of a report to assess sound and noise levels of the Tank and Pump System, pursuant to Paragraph 17.3 of the Option Agreement. (Compl. ¶¶ 69, 70, 73). Because Sponsor's claim for breach of the implied covenant of good faith and fair dealing is based on CDM1's breach of the terms of the Option Agreement, it is duplicative of Sponsor's breach of contract claim and should be dismissed with prejudice. *See Washington v. Kellwood Co.*, No. 05 CIV. 10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009) ("Because Plaintiffs' claim for breach of the duties of good faith and fair dealing relies entirely on the same obligations it alleges were breached in the contract claims, it would be futile to provide Plaintiffs leave to replead.").

2. **Recovery Under The Implied Covenant Is Precluded By Sponsor's Decision To Recover Liquidated Damages Under the Option Agreement.**

After Sponsor alleged CDM1 defaulted (CDM1 denies that it defaulted), Sponsor sent CDM1 a notice of default for refusing to close, which it alleges CDM1 "failed to cure." (Compl. ¶¶ 48, 53.) Under Paragraph 13.2 of the Option Agreement, in the event of an uncured default, Sponsor had the option to cancel the Option Agreement and retain the Premium Payment as liquidated damages:

> TIME IS OF THE ESSENCE with respect to Purchaser's obligations to pay the Exercise Price and to pay, perform or comply with Purchaser's other obligations under this Agreement. Upon the occurrence of an Event of Default, Sponsor, in its sole discretion, may elect by notice to Purchaser to cancel this Agreement*.* **If Sponsor elects to cancel, Purchaser shall have 30 days from the giving the notice cancellation to cure the specified default. If the default is not cured within such 30 days, TIME BEING OF THE ESSENCE, then this Agreement shall be deemed cancelled, and Sponsor shall have the right to retain, as and for liquidated damages, (a) the entire Premium Payment and any interest earned on the Premium Payment . . . Upon cancellation of this Agreement, Purchaser and Sponsor will be released and discharged of all further liability and obligations hereunder and under the Plan,** and the Unit may be sold to another as though this



> Agreement had never been made, and without any obligation to account to Purchaser for any of the proceeds of such sale.

(*Id.* ¶ 50; Compl. Ex. B.) Sponsor cancelled the Option Agreement and, per Paragraph 13.2, released CDM1 from "all further liability and obligations." (Compl. ¶ 53; Compl. Ex. B.).

New York courts have held, "[t]he provision for liquidated damages in a contract specifically limits the amount recoverable for the breach no matter how occasioned nor to what extent the actual damage may be." *Estate of Richter v. Novo Corp.*, 43 A.D.2d 1, 3 (1st Dept 1973). On the basis of Paragraph 13.2, Sponsor cannot retain the Premium Payment as liquidated damages and also recover additional damages. *See Smith v. Putnam*, 145 A.D.2d 383, 384 (1st Dept 1988) (explaining that where the contract contains a provision permitting the sellers to elect to cancel the contract and "be entitled to and retain the [e]scrow [b]alance as liquidated damages, the same as if this agreement had never been made" in the event of buyer's default, "plaintiffs cannot both retain the down payment as liquidated damages and recover additional damages").

3. **Proposed Briefing Schedule.**

In advance of filing this letter, CDM1 conferred with Sponsor, which requested five weeks to draft its opposition brief. As such, CDM1 proposes the following briefing schedule:

- **Opening Brief** – December 16, 2022
- **Opposition**  - January 20, 2023
- **Reply Brief** – February 3, 2023

Sincerely,

*/s/ Brittany H. Sokoloff*

Brittany H. Sokoloff

BHS