UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 41-45 PROPERTY OWNER, LLC,<br><br>      Plaintiff and Counter-Defendant,<br><br>-against-<br><br>CDM1, LLC,<br><br>      Defendant and Counter-Plaintiff | Case No. 1:22-cv-08634 (LGS) |

**CDM1'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
<u>**PARTIAL MOTION TO DISMISS**</u>

ARENTFOX SCHIFF LLP

Frederick J. Sperling
Adam Diederich
ArentFox Schiff LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
frederick.sperling@afslaw.com
adamdiederich@afslaw.com
*Admitted Pro Hac Vice*

Brittany H. Sokoloff
ArentFox Schiff LLP
1301 Avenue of the Americas
42nd Floor
New York, NY 10019
brittany.sokoloff@afslaw.com

*Attorneys for Defendant and Counter-Plaintiff CDM1, LLC.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 2

STANDARDS ON THIS MOTION .......................................................................................... 4

ARGUMENT ............................................................................................................................... 4

CONCLUSION ........................................................................................................................... 6

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1357 Tarrytown Rd. Auto, LLC v. Granite Properties, LLC*,
  142 A.D.3d 976 (2d Dep't. 2016) ...........................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................4

*Cohen v. S.A.C. Trading Corp.*,
  711 F.3d 353 (2d Cir. 2013) ....................................................................................................4

*Conopco, Inc. v. Roll Int'l*,
  231 F.3d 82 (2d Cir. 2000) ......................................................................................................4

*Murphy v. Am. Home Prods. Corp.*,
  58 N.Y.2d 293 (1983) .............................................................................................................5

*Estate of Richter v. Novo Corp.*,
  43 A.D.2d 1 (1st Dep't. 1973) .................................................................................................4

*Smith v. Putnam*,
  145 A.D.2d 383 (1st Dep't. 1988) ...........................................................................................6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................4

**PRELIMINARY STATEMENT**

The contract that governs this case is an Option Agreement that sets out obligations with which the parties must comply.  The Option Agreement contains a liquidated damages clause that limits the damages 41-45 Property Owner, LLC ("Sponsor") can obtain in the event of CDM1, LLC's default and Sponsor's cancellation of the Option Agreement.  Based on the liquidated damages clause, the Court should dismiss Sponsor's claim for breach of the implied covenant of good faith and fair dealing.

In October 2017 Sponsor and CDM1 entered into an Option Agreement for the purchase of apartment PH-58 at 520 Park Avenue, New York, New York ("PH-58") (the "Option Agreement").  The deal did not close.  Sponsor asserted that CDM1 defaulted (it did not), and Sponsor then cancelled the Option Agreement.  Ignoring the plain language of the Option Agreement's liquidated damages clause, Sponsor now seeks not only liquidated damages for breach of contract (in Count I) but also additional damages for breach of the implied covenant of good faith and fair dealing (in Count II).

There is no set of facts under which Sponsor can recover under its second cause of action. If this Court were to find that CDM1 breached the Option Agreement, CDM1's damages would be explicitly limited to the $8.5 million CDM1 paid towards the purchase of the apartment (the "Premium Payment") and any Unit Upgrade Funds (there are none and Sponsor alleges none). The plain language of the Option Agreement bars Sponsor from recovering for anything else, specifically here damages for an alleged breach of the covenant of good faith and fair dealing.  If this Court instead were to find that Sponsor breached and prematurely cancelled the Option Agreement, CDM1 would be entitled to return of the Premium Payment.  There is no set of facts under which Sponsor would be found to have breached the Option Agreement and CDM1 would be found to have breached the implied covenant of good faith and fair dealing.  For this reason,

Sponsor's second cause of action for breach of the implied covenant of good faith and fair dealing must fail.

## FACTUAL BACKGROUND[1]

In October 2017, CDM1 entered into an Option Agreement with Sponsor for the purchase of PH-58. (Compl., ECF No. 17, ¶ 15.) Upon signing the Option Agreement, CDM1 paid Sponsor the $8.5 million Premium Payment. (*Id.* ¶¶ 18, 27.)

Because PH-58 was located adjacent to the Fire Suppression Tank Room (defined in the Offering Plan as "the double height room containing fire suppression tank and accessory pumps for the Building's fire protection system" (Compl., Ex. A, ECF No. 17-1, at p. 17)), CDM1 specifically requested, and Sponsor agreed, to include Paragraph 17.3 of the Option Agreement, which states:

> **Prior to the date of Closing of Title to the Unit, Sponsor will have taken all reasonable measures to test, verify and specifically ensure Purchaser that the mechanical functioning of said Tank and Pump system does not create any sound or noise that will impair Purchaser's quiet enjoyment and use of the Unit, except in an emergency or routine maintenance.**

(*Id.* ¶¶ 20, 22; Compl., Ex. B, ECF No. 17-5, ¶ 17.3, emphasis in original.)

In advance of the closing, CDM1 asked Sponsor what steps it had taken to comply with Paragraph 17.3 of the Option Agreement and explained that absent Sponsor's compliance with Paragraph 17.3, CDM1 would not attend the closing. (Compl. ¶ 35.) Sponsor rescheduled the closing for February 8, 2019 and, in response to CDM1's request that Sponsor comply with Paragraph 17.3, Sponsor retained a consulting firm to prepare a report (the "SM&W Report"). (*Id.* ¶¶ 42, 43.) Sponsor's consultant, however, only tested the noise levels when the Automatic Fire

---

[1] The facts are taken from the Complaint (cited as "Compl. ¶ __") and the exhibits thereto (cited as "Compl., Ex. __). CDMI disputes many of the allegations but accepts the facts alleged for purposes of this motion.

Pump was inactive; it did not test the noise levels while the Automatic Fire Pump was operational. (*Id.* ¶ 45.)  For this reason and others, CDM1 objected to the SM&W Report for failing to satisfy Sponsor's obligations under Paragraph 17.3.  (*Id.*)  CDM1 requested additional information regarding the Tank and Pump System to which it was entitled under Paragraph 17.3 of the Option Agreement that required Sponsor to "specifically ensure" CDM1 that the "system does not create any sound or noise that will impair Purchaser's quiet enjoyment and use of the Unit" (Compl., Ex. B, ¶ 17.3), which Sponsor declined to provide.  (Compl. ¶¶ 46-47.)

      The deal never closed.  Sponsor sent CDM1 a notice of default for refusing to close, which Sponsor alleges CDM1 "failed to cure."  (*Id.* ¶¶ 48, 53.)  Under Paragraph 13.2 of the Option Agreement, in the event of an uncured default (CDM1 denies that it defaulted), Sponsor had the option to cancel the Option Agreement and retain the Premium Payment and any Unit Upgrade Funds (defined in the Offering Plan as "all amounts expended by, or reimbursable to, Sponsor for upgrades or extras ordered by Purchaser and agreed to in writing by Sponsor" (Compl., Ex. A, ECF No. 17-1, at p. 31)) as liquidated damages:

> TIME IS OF THE ESSENCE with respect to Purchaser's obligations to pay the Exercise Price and to pay, perform or comply with Purchaser's other obligations under this Agreement.  Upon the occurrence of an Event of Default, Sponsor, in its sole discretion, may elect by notice to Purchaser to cancel this Agreement**.  If Sponsor elects to cancel, Purchaser shall have 30 days from the giving of the notice of cancellation to cure the specified default.  If the default is not cured within such 30 days, TIME BEING OF THE ESSENCE, then this Agreement shall be deemed cancelled, and Sponsor shall have the right to retain, as and for liquidated damages, (a) the entire Premium Payment and any interest earned on the Premium Payment and (b) Unit Upgrade Funds.  Upon the cancellation of this Agreement, Purchaser and Sponsor will be released and discharged of all further liability and obligations hereunder and under the Plan,** and the Unit may be sold to another as though this Agreement had never been made, and without any obligation to account to Purchaser for any of the proceeds of such sale.

(*Id.* ¶ 50; Compl., Ex. B, ¶ 13.2, emphasis added.)

Sponsor cancelled the Option Agreement and has retained the Premium Payment.  (Compl. ¶¶ 53, 64; Compl., Ex. C, ECF No. 17-6.)  Sponsor does not allege CDM1 paid or owed any Unit Upgrade Funds, the only other funds to which Sponsor could be entitled under the Option Agreement.  (*See* Compl., Ex. B, ¶ 13.2.).  Nevertheless, Sponsor's cause of action for breach of the covenant of good faith and fair dealing seeks as damages the "additional costs of approximately $2,400,000 to eliminate Purchaser's modifications and restore PH-58 to its original completed state to render the unit marketable to future purchasers."  (Compl. ¶ 81.)

## STANDARDS ON THIS MOTION

CDM1 brings this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Dismissal under Rule 12(b)(6) is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."  *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

## ARGUMENT

Sponsor seeks more than the agreed upon liquidated damages set forth in the Option Agreement by bringing a claim for breach of the implied covenant of good faith and fair dealing.  New York courts have held that "[t]he provision for liquidated damages in a contract specifically limits the amount recoverable for the breach no matter how occasioned nor to what extent the actual damage may be."  *Estate of Richter v. Novo Corp.*, 43 A.D.2d 1, 3 (1st Dep't. 1973).  By cancelling the Option Agreement, Sponsor opted to retain the Premium Payment held in Escrow

as liquidated damages and to release CDM1 from all further liability and obligations. Sponsor cannot recover additional damages under the implied covenant of good faith and fair dealing.

Sponsor's claim for breach of the implied covenant of good faith and fair dealing cannot be reconciled with the explicit and unambiguous language in the Option Agreement limiting damages to retention of the Premium Payment. The duties of good faith and fair dealing do not imply obligations "inconsistent with other terms of the contractual relationship." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983). *See also 1357 Tarrytown Rd. Auto, LLC v. Granite Properties, LLC*, 142 A.D.3d 976, 977 (2d Dep't. 2016) ("[N]o obligation may be implied that would be inconsistent with other terms of the contractual relationship."). Here, Sponsor's attempt to use the implied covenant to construe the Option Agreement to recover more than liquidated damages contradicts the express language of Paragraph 13.2 of the Option Agreement.

Paragraph 13.2 states that, if the Agreement is cancelled, Sponsor "shall have the right to retain, as and for liquidated damages, (a) the entire Premium Payment and any interest earned on the Premium Payment and (b) Unit Upgrade Funds" and that "[u]pon cancellation . . . Purchaser and Sponsor will be released and discharged of all further liability . . . ." (*See* Compl. ¶ 50; Compl., Ex. B ¶ 13.2.) Sponsor's claim for breach of the covenant of good faith and fair dealing seeks damages in excess of what is recoverable under Paragraph 13.2. Once Sponsor opted to cancel the Option Agreement, it discharged CDM1 from all further liability and limited its damages to the Premium Payment and any Unit Upgrade Funds.

Paragraph 13.2 does not entitle Sponsor to the "additional costs" it allegedly incurred "to eliminate Purchaser's modifications" to PH-58 because such alleged additional costs by definition are not Unit Upgrade Funds. (*See* Compl. ¶ 81; Compl., Ex. A, ECF No. 17-1, at p. 31.) On the basis of Paragraph 13.2, Sponsor may only recover liquidated damages and may not seek

additional damages. *See Smith v. Putnam*, 145 A.D.2d 383, 384-85 (1st Dep't. 1988) (explaining that where the contract contains a provision permitting the seller to elect to cancel the contract and "be entitled to and retain the escrow balance as liquidated damages, the same as if this agreement had never been made" in the event of buyer's default, "plaintiffs cannot both retain the down payment as liquidated damages and recover additional damages" (brackets and internal quotation marks omitted)).

Nor is Sponsor entitled to assert this claim in the alternative to its claim for breach of contract. There is no set of facts in which Sponsor would be entitled to recover damages under the covenant of good faith and fair dealing. If Sponsor were to succeed on its claim for breach of contract and be entitled to retain the Premium Payment, the Option Agreement would limit Sponsor's damages to that amount. If the Court instead finds that CDM1 did not breach the Option Agreement, Sponsor will not be entitled to damages for the "additional costs" it incurred "to eliminate [CDM1's] modifications" (*see* Compl. ¶ 81) because those costs would have been caused by Sponsor's breach and termination of the Option Agreement. The plain language of the Option Agreement makes recovery under the implied covenant of good faith and fair dealing impossible.

## CONCLUSION

For the foregoing reasons this Court should dismiss the second cause of action in Complaint against CDM1 with prejudice.

| | |
|---|---|
| Dated: New York, New York<br>January 20, 2023 | ARENTFOX SCHIFF LLP<br><br>By: _____<br>Brittany H. Sokoloff<br>ArentFox Schiff LLP<br>1301 Avenue of the Americas<br>42nd Floor<br>New York, NY  10019<br>brittany.sokoloff@afslaw.com<br>Telephone:  212.484.3900<br>Facsimile:  212.484.3990<br><br>Frederick J. Sperling<br>Adam Diederich<br>ArentFox Schiff LLP<br>233 South Wacker Drive<br>Suite 7100<br>Chicago, IL 60606<br>frederick.sperling@afslaw.com<br>adam.diederich@afslaw.com<br>*Admitted Pro Hac Vice*<br><br>*Attorneys for Defendant and Counter-Plaintiff CDM1, LLC* |