UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 41-45 PROPERTY OWNER, LLC,<br><br>    Plaintiff and Counter-Defendant,<br><br>-against-<br><br>CDM1, LLC,<br><br>    Defendant and Counter-Plaintiff | Case No. 1:22-cv-08634 (LGS) |

**CDM1'S REPLY MEMORANDUM OF LAW IN FURTHER
<u>SUPPORT OF ITS PARTIAL MOTION TO DISMISS</u>**

ARENTFOX SCHIFF LLP

Frederick J. Sperling
Adam Diederich
ArentFox Schiff LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
frederick.sperling@afslaw.com
adamdiederich@afslaw.com
*Admitted Pro Hac Vice*

Brittany H. Sokoloff
ArentFox Schiff LLP
1301 Avenue of the Americas
42nd Floor
New York, NY 10019
brittany.sokoloff@afslaw.com

*Attorneys for Defendant and Counter-Plaintiff CDM1, LLC.*

-i-

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    A.    The Liquidated Damages Clause Bars Sponsor From Seeking Damages For Costs Incurred Restoring PH-58. ..................................................................... 2

    B.    CDM1's Motion To Dismiss Is Not Premature. ..................................................... 5

    C.    It Is Irrelevant Whether Sponsor's Claim For Breach Of The Implied Covenant Is Independent of Sponsor's Breach Of Contract Claim. ...................... 6

CONCLUSION ............................................................................................................................... 6

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anexia, Inc. v. Horizon Data Sols. Ctr., LLC*,
  74 Misc. 3d 1233(A), 165 N.Y.S.3d 831 (N.Y. Sup. Ct. 2022)..................................................6

*Dalton v. Educ. Testing Servs.*,
  663 N.E.2d 289 (N.Y. 1995)......................................................................................................6

*Fasolino Foods Co. v. Banca Nazionale del Lavoro*,
  961 F.2d 1052 (2d Cir. 1992).....................................................................................................3

*Jarro Bldg. Indus. Corp. v. Schwartz*,
  54 Misc. 2d 13 (App. Term 1967) .............................................................................................4

*Network Enters., Inc. v. APBA Offshore Prods., Inc.*,
  No. 01 CIV. 11765 (CSH), 2004 WL 1837349 (S.D.N.Y. Aug. 16, 2004)...............................3

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*,
  765 N.Y.S.2d 575 (App. Div. 1st Dep't 2003) .........................................................................6

*Richter v. Novo Corp.*,
  43 A.D.2d 1 (1st Dep't 1973); (Opp. ).......................................................................................2

*Signature Realty, Inc. v. Tallman*,
  814 N.E.2d 429 (N.Y. 2004)......................................................................................................2

*X.L.O. Concrete Corp. v. John T. Brady & Co.*,
  104 A.D.2d 181 (1st Dept. 1984), *aff'd*, 489 N.E.2d 768 (N.Y. 1985) ................................3, 4

**PRELIMINARY STATEMENT**

41-45 Property Owner LLC ("Sponsor") devotes most of its Memorandum in Opposition to irrelevant arguments – arguing the merits of the case and telling the Court why its claim for breach of the covenant of good faith and fair dealing can be asserted independent of Plaintiff's breach of contract claim.  But those issues are not before the Court on CDM1's Motion to Dismiss.  CDM1 heeded the Court's statement that an argument to dismiss Sponsor's second claim as duplicative might present factual issues that could not be decided on a motion to dismiss.  CDM1 therefore limited the Motion to the plain language of the liquidated damages clause.  Sponsor acknowledges this in a footnote and yet still argues the merits of its breach of contract claim and the supposed independence of its implied covenant claim throughout the Opposition.

The sole issue before the Court on the Motion is whether the liquidated damages clause in the Option Agreement bars Sponsor from bringing a claim for breach of the covenant of good faith and fair dealing.  It does.  Preserving this futile claim would open the parties to extensive discovery on an issue that the parties resolved when they entered into the Option Agreement – the scope of available damages.  Sponsor's second cause of action for breach of the covenant of good faith and fair dealing has no place in this litigation and should be dismissed.

**ARGUMENT**

Sponsor asserts three bases to preserve its claim for breach of the covenant of good faith and fair dealing:  (1) that the liquidated damages provision does not preclude Sponsor's claim, (2) that the Motion is premature, and (3) that Sponsor's claim for breach of the implied covenant of good faith and fair dealing can be asserted independently of its claim for breach of contract.  None saves Sponsor's claim from dismissal.

A.  **The Liquidated Damages Clause Bars Sponsor From Seeking Damages For Costs Incurred Restoring PH-58.**

Sponsor does not dispute that a contract provision for liquidated damages controls the rights of the parties in the event of breach if the contract specifically states that, going forward, "each party shall be free and clear of all claims against the other." *Richter v. Novo Corp.*, 43 A.D.2d 1, 1 (1st Dep't 1973); (Opp. at p. 8). The Option Agreement does exactly that (Compl., Ex. B, ECF No. 17-5, ¶ 13.2), which is enough for the Court to decide this Motion in CDM1's favor. Without the support of a single case, Sponsor asserts that it could prevail on its second cause of action because the liquidated damages clause does not cover the costs Sponsor incurred "to eliminate [CDM1's] modifications and restore PH-58 to its original completed state." (Opp. at p. 10.) This argument contradicts both the plain language of the liquidated damages clause and New York law.

It is a fundamental principle of contract construction that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *Signature Realty, Inc. v. Tallman*, 814 N.E.2d 429, 430 (N.Y. 2004). Paragraph 13.2 of the Option Agreement states that if the Option Agreement is cancelled, Sponsor "shall have the right to retain, as and for liquidated damages, (a) the entire Premium Payment and any interest earned on the Premium Payment and (b) Unit Upgrade Funds" and that "[u]pon cancellation . . . Purchaser and Sponsor will be released and discharged of all further liability and obligations hereunder and under the Plan." (*See* Compl., ECF No. 17, ¶ 50; Compl., Ex. B ¶ 13.2.) Because Sponsor cancelled the Option Agreement and elected to retain the Premium Payment as liquidated damages, Sponsor cannot also recover additional damages under the implied covenant of good faith and fair dealing. (Compl. ¶ 64; Compl., Ex. C, ECF No. 17-6.) The plain language of

Paragraph 13.2 limits Sponsor's potential recovery under the Option Agreement and the Plan to liquidated damages.

The liquidated damages clause controls here because Sponsor's allegation that CDM1 breached the implied duty of good faith "is merely" an allegation of "a breach of the underlying contract." *See Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal citation and quotation marks omitted). *See also Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01 CIV. 11765 (CSH), 2004 WL 1837349, at *4 (S.D.N.Y. Aug. 16, 2004) ("Because the duty to act in good faith under a contract is not a duty separable from the contract, 'breach of an implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from a breach of the contract.'" (internal citation omitted).). In alleging a breach of the covenant of good faith and fair dealing, Sponsor explicitly refers to CDM1's obligations arising out of the Option Agreement: "The Option Agreement included implied promises on the part of Purchaser to not seek unreasonable enforcement of the undefined and vague clause that it added to the agreement." (Compl. ¶ 77.) Because the second cause of action arises under the Option Agreement, it is barred by the liquidated damages clause: "Purchaser and Sponsor will be released and discharged of all further liability and obligations hereunder and under the Plan." (*See* Compl. ¶ 50; Compl., Ex. B ¶ 13.2.).

Sponsor's contention that it is allowed to "retain a down payment" in the form of liquidated damages "and seek compensation for actual damages" (Opp. at 9) also ignores the fact that "a valid contractual provision for liquidated damages controls the rights of the parties in the event of a breach, notwithstanding that the stipulated sum may be less than the actual damages allegedly sustained by the injured party." *X.L.O. Concrete Corp. v. John T. Brady & Co.*, 104 A.D.2d 181, 184 (1st Dept. 1984), *aff'd*, 489 N.E.2d 768 (N.Y. 1985). In *X.L.O.*, the First Department limited

New York University's potential damages to the liquidated damages provided for in the contract; it did not permit N.Y.U. to recover the actual and consequential damages caused by the contractor's delayed performance. *Id.* at 183, 185. The risk that N.Y.U. faced of incurring higher delay damages is much like the risk that Sponsor faced that it would need "to eliminate [CDM1's] modifications" (*see* Compl. ¶ 81) should the Option Agreement fall through. These damages were contemplated by the parties and accounted for by the $8.5 million Premium Payment that Sponsor seeks to retain under Paragraph 13.2 of the Option Agreement. *See Jarro Bldg. Indus. Corp. v. Schwartz*, 54 Misc. 2d 13, 18 (App. Term 1967) ("The underlying purpose [of a liquidated damages clause] is to permit parties to look to the future, anticipate that there may be a breach and make a settlement in advance.").

Sponsor attempts to craft a loophole for its second claim by arguing that the money Sponsor allegedly spent to complete PH-58 and "eliminate [CDM1's] modifications" (*see* Compl. ¶ 81) does not arise under either the Option Agreement or the Offering Plan. (*See* Opp. at p. 10.) To the contrary, when Sponsor agreed to the liquidated damages clause, it knew it might have to "incur[] additional costs . . . to eliminate Purchaser's modifications and restore PH-58 to its original completed state to render the unit marketable to future purchasers." (*See* Compl. ¶ 81). Pursuant to the Rider and Additional Rider to the Option Agreement, Sponsor was aware that it was selling PH-58 to CDM1 "without using building standard finishes." (*Id.* at Rider ¶ 1.4 and Additional Rider ¶ 1.4.) Therefore, if CDM1 failed to close on PH-58 (it did not), Sponsor would be left with the unit in an unfinished state and would have had to bear the cost to finish the unit. (*See* Compl. Ex. B ¶¶ 17.2, 17.4, 17.5.) Because the Option Agreement contemplated these costs, they are subsumed within the liquidated damages clause.

### B. CDM1's Motion To Dismiss Is Not Premature.

Sponsor next contends that the Motion is premature at this stage of the litigation because there is a factual dispute regarding Sponsor's entitlement to liquidated damages under Sponsor's first cause of action. While CDM1 and Sponsor disagree on who is entitled to the Premium Payment, that dispute does not make the Motion premature. Sponsor cannot prevail on its second cause of action regardless of whether it prevails on its first cause of action. If Sponsor prevails on its first cause of action for breach of contract and recovers liquidated damages, it cannot also prevail on its second cause of action for actual damages. And if Sponsor's first cause of action fails, the Court will necessarily have ruled that Sponsor breached by improperly terminating the Option Agreement, which means that Sponsor caused the damages it seeks in its second cause of action. Unsurprisingly, CDM1 cannot point to a single case where a party was found liable for breaching a contract and also was awarded damages that arose directly from its own breach.

Contrary to Sponsor's position, the Motion is timely because it presents an issue that can be decided on the law and that will extensively shape discovery in this litigation. If the Court grants the Motion and dismisses Sponsor's implied covenant claim, the parties will not need to engage in discovery on issues including (1) the Unit Modifications that CDM1 requested in the Riders to the Option Agreement, (2) when construction was fully completed on 520 Park Avenue, (3) the credit CDM1 was to receive at the Closing per the Rider and Additional Rider to the Option Agreement (Compl. Ex. B at Rider ¶ 1.2 and Additional Rider ¶ 1.2), and (4) the cost for Sponsor to "to eliminate [CDM1's] modifications" (*see* Compl. ¶ 81; Compl. Ex. B). This will limit the scope of document production and scope of depositions. Therefore, the Motion is not only timely, but also well-timed.

### C. It Is Irrelevant Whether Sponsor's Claim For Breach Of The Implied Covenant Is Independent of Sponsor's Breach Of Contract Claim.

Sponsor's final argument is confusing and irrelevant. It argues that its claim for breach of the covenant of good faith and fair dealing "can stand on its own" if its first cause of action fails because CDMI "should still be liable for its alleged bad faith scheme." (Opp. at 11-12.) As explained above, Sponsor's second cause of action cannot "stand on its own" because it is barred by the liquidated damages clause. Sponsor cites three cases for the proposition that a plaintiff may bring a claim for breach of the implied covenant of good faith and fair dealing where the defendant is alleged to have "exercised its rights under its contract in bad faith in order to realize gains that the contract implicitly denied or to deprive the other party of the fruit of its bargain." *See Anexia, Inc. v. Horizon Data Sols. Ctr., LLC*, 74 Misc. 3d 1233(A), 165 N.Y.S.3d 831, at *3 (N.Y. Sup. Ct. 2022); *Dalton v. Educ. Testing Servs.*, 663 N.E.2d 289, 293 (N.Y. 1995); *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 587 (App. Div. 1st Dep't 2003). These cases are irrelevant because they do not involve a liquidated damages clause that forecloses any claim arising out of the contract, which would include claims for breach of the covenant of good faith and fair dealing, as the Option Agreement does here. Plaintiff's second cause of action seeks damages arising out of modifications made to PH-58 pursuant to riders to the Option Agreement. Because those damages are based on the Option Agreement, they are foreclosed by the liquidated damages clause in the Option Agreement.

### CONCLUSION

For the foregoing reasons this Court should dismiss the second cause of action in Complaint against CDM1 with prejudice.

<table>
<tr><td>Dated: New York, New York<br>February 17, 2023</td><td>ARENTFOX SCHIFF LLP<br><br>By: _____<br>Brittany H. Sokoloff<br>ArentFox Schiff LLP<br>1301 Avenue of the Americas<br>42nd Floor<br>New York, NY  10019<br>brittany.sokoloff@afslaw.com<br>Telephone:  212.484.3900<br>Facsimile:  212.484.3990<br><br>Frederick J. Sperling<br>Adam Diederich<br>ArentFox Schiff LLP<br>233 South Wacker Drive<br>Suite 7100<br>Chicago, IL 60606<br>frederick.sperling@afslaw.com<br>adam.diederich@afslaw.com<br>*Admitted Pro Hac Vice*<br><br>*Attorneys for Defendant and Counter-Plaintiff CDM1, LLC*</td></tr>
</table>