

Scott E. Mollen
Partner
Phone: 212.592.1505
Fax: 212.545.3370
smollen@herrick.com

March 22, 2023

Honorable Lorna B. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *41-45 Property Owner, LLC v. CDM1, LLC*, Case No. 22-cv-8634

Dear Judge Schofield:

We represent plaintiff 41-45 Property Owner, LLC ("Plaintiff") in the above-referenced action. We respectfully write in accordance with Your Honor's Individual Rule III(c)(3) and Local Rule 37.2 to request a pre-motion discovery conference. The parties conferred on March 20, 2023 but could not resolve all disputes regarding the upcoming deposition of defendant CDM1 LLC's ("Defendant's") corporate representative which is scheduled on March 30, 2023. In light of the time constraint, Defendant agrees to submit its response within one day of the filing of this letter.

Relevant Background

Plaintiff is the sponsor of a new construction condominium located at 520 Park Avenue, NY, NY (the "Condominium"). In October 2017, the parties entered into an agreement for the purchase and sale of Condominium unit PH-58 for $34 million (the "Agreement").

Plaintiff asserts two causes of action against Defendant for: (i) breach of contract; and (ii) breach of the implied covenant of good faith and fair dealing. Plaintiff's first cause of action is based on Defendant's failure to close title to PH-58 as required by the Agreement. Plaintiff's second cause of action is based on Defendant's bad faith efforts to manufacture a breach of the Agreement by asserting a false concern about possible noise from an emergency fire suppression system that only operates during a fire or routine maintenance.

On March 1, 2023, Plaintiff requested a discovery conference regarding Defendant's refusal to produce 3 categories of documents: (i) documents concerning Defendant's purchase of other residential real estate in New York County during the relevant time period; (ii) documents concerning Defendant's intention or desire to sell or otherwise dispose of PH-58; and (iii) documents, such as bank records, concerning Defendant's ability to close. (ECF Doc. No. 41).

On March 10, 2023, the Court denied Plaintiff's application on the grounds that "Plaintiff has not established that discovery into Mr. and Mrs. Moreno's other real estate holdings or financial assets is relevant to either of its claims."[1] The Court did not address Defendant's

---

[1] Plaintiff respectfully objects to the Court's decision to limit discovery and preserves its right to challenge the Court's decision. Under the Federal Rules of Civil Procedure's liberal discovery standard of discovery, the parties are entitled to conduct discovery that may lead to admissible evidence. The discovery requests denied by the Court were reasonably tailored and appropriate to address Plaintiff's bad faith claim.

**HERRICK, FEINSTEIN LLP** • Two Park Avenue • New York, NY 10016 • Phone: 212.592.1400 • Fax: 212.592.1500

HF 14912371v.2

document demand that sought documents concerning Defendant's intention or desire to sell or otherwise dispose of PH-58 or Defendant's interest in the Agreement.

Disputed 30(b)(6) Deposition Topics

Defendant objects to five of Defendant's 30(b)(6) deposition topics:

Topic No. 6: The proposals and plans for the potential renovation or completion of PH-58.

Topic No. 7: The Parties' discussions regarding CDM1's intention or desire to sell, assign, rent or otherwise dispose of PH-58 or CDM1's interest in the Option Agreement.

Topic No. 11: The December 27, 2018 email from CDM1's counsel to Sponsor's counsel which explained that CDM1 "has reassessed the situation and now would prefer to not live in the building" and that CDM1 has "retained Adam Leitman Bailey as their litigation counsel but have asked me to reach out to you first to see if you and I could work out a speedy and amicable resolution".

Topic No. 12: Whether CDM1 was willing to close title to PH-58 as of December 27, 2018.

Topic No. 15: CDM1's non-privileged discussions among its members, managers, agents, consultants, and representatives or with third-parties concerning:[2] (ii) CDM1's decision to terminate the Option Agreement; and (iii) strategy(ies) to seek the return of the Premium Payment paid pursuant to the Option Agreement.

Topic No. 6 concerns Defendant's planned completion of PH-58. Plaintiff agreed that if Defendant confirmed in writing that it would not challenge the reasonableness of Plaintiff's out of pocket expenses for the completion of PH-58 (if Plaintiff succeeds on its breach of the implied covenant claim), then Plaintiff would not question Defendant about its specific plans for the completion of PH-58 and limit its questions: (i) who Defendant worked with; (ii) when the planning occurred; (iii) materials ordered for the work; (iv) expected commencement of the work; and (v) when Defendant determined that it would not complete the unit and communicated the decision to the parties it was working with. Defendant rejected Plaintiff's compromise.

Topic No. 6 is relevant to Plaintiff's bad faith claim. This testimony is necessary to establish when Defendant determined it would not purchase PH-58 and when the decision was communicated to its contractors, architects, engineers, and/or designers (whose identities are known exclusively to Defendant). This testimony will demonstrate Defendant's bad faith and show that Defendant communicated its decision and ceased its planning efforts long before it raised any issue with Plaintiff. Additionally, testimony regarding the scope of work and the expected costs of such work will substantiate the expectancy and reasonableness of Plaintiff's out of pocket expenses. Defendant has not articulated any valid basis for objecting to Topic No. 6.

The testimony sought from Topic No. 7 is relevant to Plaintiff's bad faith claim. Defendant spoke with one of Plaintiff's former employees several times regarding Defendant's desire to do a quick "flip" of PH-58 for profit, and, Plaintiff alleges that when Defendant learned that this could not be done, Defendant formulated its scheme to claim that Plaintiff breached the Agreement. The discussions between the parties regarding PH-58 are absolutely relevant to the instant action. Defendant's testimony is necessary to confirm the recollections of Plaintiff's former employee and

---

[2] For clarity, Plaintiff omits subsection (i) which is not contested

to establish when Defendant determined it no longer desired to purchase PH-58 and would instead back out of the deal. Contrary to Defendant's objection, the Court's decision did not address this topic. Furthermore, Topic No. 7 is not the same as Request No. 15 because Plaintiff limited the topic to only cover conversations between the parties rather than Defendant and third parties.

Topic No. 11 seeks key testimony from Defendant. On December 27, 2018 (one week before the scheduled closing), Defendant's counsel wrote to Plaintiff's counsel to announce that:

> [Defendant's members] have reassessed the situation and now would prefer to not live in the building. With the closing scheduled for Jan 4, 2019, they have retained Adam Leitman Bailey as their litigation counsel but have asked me to reach out to you first to see if you and I could work out a speedy and amicable resolution. Their proposal, provided we have a speedy and amicable resolution, is to terminate the option and forfeit $3.4m of the premium payment . . .

Defendant's counsel also raised – for the first time – that "[n]o one has reached out to them to evidence sponsor's compliance with Section 17.3 . . . Sponsor's failure to do so suggests, disturbingly, that sponsor may not have complied with Section 17.3" The letter indicates that the alleged sound issues from the tank and pump was one of several potential excuses that Defendant was exploring to justify its failure to close. The letter also indicates that Defendant threatened to retain a well known aggressive real estate attorney to fight Plaintiff and get its way if Plaintiff refused to accept Defendant's inadequate compromise. Testimony regarding this letter, and Defendant's decision to terminate the agreement, is crucial to Plaintiff's claims. Defendant has not offered any substantive basis for their objection. Instead, Defendant insists that the only issue that matters in the case is whether Plaintiff complied with 17.3. Defendant's objection is wrong as well as hypocritical since Defendant also seeks to question Plaintiff's corporate representative about Plaintiff's "decision to terminate the Agreement and communications surrounding that termination." Defendant is not the only party that is entitled to obtain discovery to prove its claims.

In light of the Court's March 10, 2023 decision, Plaintiff limited Topic No. 12 to whether Defendant was willing to close as of December 27, 2018. This topic does not seek testimony regarding Mr. and Mrs. Moreno's financial assets but rather about whether they intended to or were willing to close as required by the Agreement. Based on Defendant's counsel's December 27, 2018 email, Defendant had already conclusively determined that it would not close title to PH-58 and instead was preparing for litigation. Defendant ignores that Plaintiff's bad faith claim and objects to Topic No. 12 on the grounds that whether a party was "ready, willing, and able to close" is irrelevant for a breach of contract claim. Defendant's objection is improper because Plaintiff must establish Defendant's intent to succeed on its bad faith claim.

In response to Defendant's objection, Plaintiff agreed to limit the contested portion of Topic No. 15 to seek testimony concerning non-privileged communications concerning Defendant's decision to terminate the Option Agreement and its strategies to seek the return of the Premium Payment. This topic goes to the *res gestae* of the case. There is no reasonable question as to its relevancy.

We thank You for Your Honor's consideration and attention to this matter.

Respectfully submitted,

*/s/ Scott E. Mollen*