```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
41-45 PROPERTY OWNER, LLC,                                  :
                                        Plaintiff,          :
                                                            :          22 Civ. 8634 (LGS)
                -against-                                   :
                                                            :          OPINION & ORDER
CDM1, LLC,                                                  :
                                        Defendant.          :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff 41-45 Property Owner, LLC, the sponsor of a luxury condominium, brings this civil action against Defendant CDM1, LLC. The Complaint's only surviving claim is for breach of contract regarding Defendant's failure to close on the purchase of a condominium unit. Defendant asserts a counterclaim for breach of contract regarding Plaintiff's failure to perform under the parties' purchase and sale agreement. The parties cross-move for summary judgment. For the reasons below, the motions are denied.

I.   **BACKGROUND**

The following facts are drawn from the parties' evidentiary submissions in connection with the cross-motions, including their Local Civil Rule 56.1 statements, and are undisputed. On the respective cross-motions, all reasonable inferences are drawn in favor of the nonmoving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022) (on summary judgment, "construing all evidence, and drawing all reasonable inferences, in favor of the nonmoving party").

Plaintiff is the sponsor of a new construction luxury condominium project (the "Condominium"). Defendant is a limited liability company with two individual members. In approximately 2017, Defendant became interested in purchasing Unit PH-58 (the "Unit") in the

Condominium. The Unit (i.e., the apartment) is located adjacent to an automatic fire pump (the "Pump"), which is part of the Condominium's fire suppression system. The Pump consists of a water tank (the "Tank"), a pump to distribute water and a "jockey" pump to maintain pressure in the Tank.

On September 21, 2017, Defendant's agent wrote to the director of sales for the Condominium regarding "a few areas where we'd like some more information or comfort," "mainly including the Fire Suppression Tank Room (safety, noise, the easement, etc.)." In the September 21, 2017, email, Defendant's agent stated, "As you can see, and probably have discerned from your conversations with us, there is nothing we are overly concerned about but rather, just want some additional guidance and comfort about."

The parties executed an Option Agreement (the "Agreement") on October 6, 2017, in which Plaintiff agreed to sell, and Defendant agreed to buy an option to purchase the Unit. The Agreement set the purchase price at $34 million, including a deposit in the amount of $8,500,000 due upon execution of the Agreement. Section 17.3 of the Agreement states:

> Prior to the date of Closing of Title to the Unit, Sponsor will have taken all reasonable measures to test, verify and specifically ensure Purchaser that the mechanical functioning of said Tank and Pump system does not create any sound or noise that will impair Purchaser's quiet enjoyment and use of the Unit, except in an emergency or routine maintenance.

Prior to closing, on December 27, 2018, Defendant emailed Plaintiff, stating, "I have a very unhappy client. They are unhappy with the way the sponsor has treated them throughout the process." The email identified several alleged issues, including that "[n]o one has reached out to them to evidence sponsor's compliance with Section 17.3 of the option agreement . . . . In this respect, by now, sponsor should have provided a copy or copies of all reports obtained by sponsor from acoustical engineers it employed for this purpose. Sponsor's failure to do so

suggests, disturbingly, that sponsor may not have complied with Section 17.3."

On January 3, 2019, Defendant sent another email to Plaintiff, stating, "The buyer's position is no different from the sponsor's and the buyer intends to enforce all of its contractual rights under the option agreement.  To that effect, the buyer would like to know what actions the sponsor took to comply with sponsor's pre-closing obligations per 17.3 of the option agreement." That same day, Plaintiff responded, stating, "With respect to section 17.3 of the option agreement, we confirm that Sponsor has consulted with its sound consultant, who has confirmed that the Tank and Pump system is not anticipated to create sounds or noise that would impair purchaser's quiet enjoyment and use of the unit, except potentially during an emergency or routine maintenance."

On January 10, 2019, Plaintiff emailed Defendant a report generated by Plaintiff's sound consultant regarding sound testing performed in the Unit.  On January 17, 2019, Defendant emailed Plaintiff a document in response to the sound consultant's report, alleging shortcomings with the report.

On February 11, 2019, after repeated adjournments of the scheduled closing date, Plaintiff served Defendant with a notice of default which stated that Defendant must close title on March 15, 2019, or the Agreement would be deemed cancelled without further notice and Plaintiff would have the right to retain Defendant's $8,500,000 deposit.  On February 26, 2019, Defendant responded to the notice, stating, "Sponsor cannot declare Purchaser in default because Sponsor failed to satisfy its pre-closing obligations in violation of the Option Agreement. Sponsor's refusal to perform -- and its election to instead invoke the cancellation remedy in Section 13.2 of the Option Agreement by sending a Default Notice -- constitutes a repudiation of

3

the Option Agreement by Sponsor and entitles Purchaser to a return of the Premium Payment in its entirety."

Defendant did not close title on March 15, 2019. In 2022, Plaintiff sold the Unit to another purchaser.

## II. STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).[1] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017). In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). On cross-motions for summary judgment, "the court evaluates each party's motion on its own merits and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023).

The Agreement contains a New York choice of law provision. In addition, the parties cite New York law in their motion papers. "[S]uch implied consent is sufficient to establish the applicable choice of law." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017).

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

4

### III. DISCUSSION

The parties cross-move for summary judgment on their respective breach of contract claims. Under New York law, breach of contract requires that "(1) a contract exists; (2) [the moving party] performed in accordance with the contract; (3) [the opposing party] breached its contractual obligations; and (4) [the opposing party's] breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022).

Plaintiff argues that Defendant breached the Agreement by failing to close on the purchase of the Unit after Plaintiff adequately performed under Section 17.3 of the Agreement. Defendant argues that its performance is excused because Plaintiff materially breached the Agreement by failing to perform under Section 17.3. The dispositive question for both motions for summary judgment is whether Plaintiff performed under Section 17.3. The motions are denied because genuine issues of material fact exist regarding Plaintiff's performance under Section 17.3.

### A. Defendant's Motion for Summary Judgment

Defendant's motion for summary judgment is denied because, resolving all factual disputes in Plaintiff's favor as the non-moving party, a reasonable fact finder could conclude that Plaintiff performed under Section 17.3. Section 17.3 states:

> Prior to the date of Closing of Title to the Unit, Sponsor will have taken all reasonable measures to test, verify and specifically ensure Purchaser that the mechanical functioning of said Tank and Pump system does not create any sound or noise that will impair Purchaser's quiet enjoyment and use of the Unit, except in an emergency or routine maintenance.

First, evidence in the record construed in Plaintiff's favor supports a finding that Plaintiff satisfied its obligation to "have taken all reasonable measures to test" and "verify." In January 2019, Plaintiff obtained a report from a sound consultant. The report states that sound levels

were measured in the bedroom adjacent to the pump room and the living room; the report concludes that "the measured levels in both spaces were found to be quieter than [American Society of Hearing, Refrigerating and Air-Conditioning Engineers] guidelines" and that "there was no noise coming from the Tank and Pump adjacent to the bedroom." The report also states that "some of the variation in sound level" registered between the bedroom and living room "may be attributable to outside noise intrusion, rather than purely interior-generated sounds" and that the "rooms were bare, without residential furnishings which tend to absorb sound and lower interior-sound levels." In addition, deposition testimony states that Plaintiff had a "construction manager on-site," "an acoustical engineer" and "had people walk the building" to comply with Section 17.3 as of December 2018.

 Second, evidence in the record construed in Plaintiff's favor supports a finding that Plaintiff satisfied its obligation under Section 17.3 to "specifically ensure the Purchaser." Plaintiff reported to Defendant by email on January 3, 2019, that Plaintiff had "consulted with its sound consultant, who has confirmed that the Tank and Pump system is not anticipated to create sounds or noise that would impair purchaser's quiet enjoyment and use of the unit, except potentially during an emergency or routine maintenance." On January 10, 2019, Plaintiff emailed Defendant a copy of the sound consultant's January 7, 2019, report.

 Defendant interprets Section 17.3's requirement to take "all reasonable measures to test, verify and specifically ensure" to demand more from Plaintiff. What "all reasonable measures" requires from Plaintiff is ambiguous and is a question best resolved by the finder of fact. "The resolution of an ambiguous provision, for which extrinsic evidence may be used, is for the trier of fact." *Rhoda v. Rhoda*, 110 N.Y.S.3d 35, 37 (2d Dep't 2019). "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent or when

6

specific language is susceptible of two reasonable interpretations." *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014).  As detailed above, Plaintiff submits evidence of its conduct regarding each step of testing, verifying and specifically ensuring Defendant.  Reasonable minds might differ on whether that conduct satisfies "all reasonable measures."  The dispute regarding Plaintiff's performance -- specifically whether it was tantamount to "all reasonable measures" -- is a factual inquiry that cannot be resolved as a matter of law.  *Zev v. Merman*, 533 N.E.2d 669, 670 (1988) ("The determination of reasonableness must by its very nature be determined on a case-by-case basis" and "depends upon the facts and circumstances of the particular case."); *Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693, 2016 WL 3538379, at *18 (S.D.N.Y. June 22, 2016) (New York law) (noting "the general presumption that reasonableness is a jury question").

Finally, evidence in the record construed in Plaintiff's favor supports a finding that the Pump activates only as permitted under the exception for "emergencies and routine maintenance" in Section 17.3.  The January 2019 sound consultant report states that the Pump in the room adjacent to the bedroom is "activated only during emergencies."  Deposition testimony also states that "water is not intended to flow through the system except either during testing or when the system is actively extinguishing a fire" and that the Pump was turned off during normal water flow testing, draining, and filling and therefore would not make noise during those operations.  An acoustic survey performed on May 2, 2023, states, "Based on our understanding of the use of the Automatic Fire Pump and Jockey Pump, the Automatic Fire Pump is not expected to function (and therefore not make noise) unless called upon (e.g. in cases of routine servicing or during an emergency)."

7

B.  **Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment is denied because, resolving all factual disputes in Defendant's favor as the non-moving party, a reasonable fact finder could find that Plaintiff materially breached the Agreement by failing to perform under Section 17.3.

First, the evidence in the record construed in Defendant's favor supports a finding that Plaintiff did not "take[] all reasonable measures to test" and "verify" that the Pump would not impair Defendant's quiet enjoyment and use of the Unit.  Deposition testimony indicates that Defendant did not conduct sound testing until January 2019, after the original closing date of November 27, 2018.  In addition, Defendant's document in response to the sound consultant report states that even when Plaintiff did conduct the sound testing, no tests were performed while the Pump was in operation.  Deposition testimony states that when the Pump is in operation, it produces noise within the Unit that exceeds the New York City Noise Code.

Evidence construed in Defendant's favor also supports a finding that Plaintiff did not "specifically ensure" Defendant.  Plaintiff failed to provide specific information regarding sound levels when Defendant requested and did not allow Defendant to visit the Tank Room or allow Defendant to measure the noise caused by the system when it was running.  Defendant also emailed a document to Plaintiff in response to Plaintiff's sound consultant report, which expressed several concerns with the report.  During the purchase process, Defendant sent several emails to Plaintiff indicating that it was concerned about the noise level.

Finally, construing the evidence in Defendant's favor, the record supports a finding that the Pump activates outside of "emergencies or routine maintenance."  Deposition testimony states that the Pump runs when the pressure drops below a preset threshold, including situations

that Defendant argues do not qualify as "emergencies or routine maintenance" under Section 17.3, such as "doing sprinkler work in an apartment."

Plaintiff argues that summary judgment should be granted on its breach of contract claim because Section 17.3 is not a condition precedent to Defendant's obligation to close title on the Unit. However, to succeed on its breach of contract claim, Plaintiff must prove that it "performed in accordance with the contract." *34-06 73, LLC*, 198 N.E.3d at 1287. A party's failure to perform can constitute breach even if the provision is not a condition precedent. *See, e.g.*, *Parlux Fragrances, LLC v. S. Carter Enters.*, LLC, 164 N.Y.S.3d 108, 118 (1st Dep't 2022) (finding provisions were not conditions precedent but were contractual promises for which "triable issues of fact exist as to the extent plaintiffs breached"). In addition, Section 32 of the Agreement grants each party "the right . . . to insist upon the strict performance by the other party of any and all provisions of this Agreement to be performed by such party."

Plaintiff also argues that the December 27, 2018, email from Defendant to Plaintiff constituted complete repudiation and breach of the contract. Plaintiff is not entitled to summary judgment based on repudiation. "Anticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares its intention not to fulfill a contractual duty." *Condor Funding, LLC v. 176 Broadway Owners Corp.*, 46 N.Y.S.3d 99, 101-02 (1st Dep't 2017). "Whether a party has anticipatorily breached a contract is ordinarily a question of fact reserved for a jury, but a court may decide the issue as a matter of law when the purported repudiation is embodied in an unambiguous writing." *Princes Point LLC v. Muss Dev. L.L.C.*, 24 N.Y.S.3d 292, 296 (1st Dep't 2016), *rev'd on other grounds*, 87 N.E.3d 121 (N.Y. 2017). Although Defendant's alleged repudiation is embodied in writing, the writing is ambiguous at best. The December 2018 email states that Defendant "ha[s] reassessed the situation and now

9

would prefer not to live in the building" and Defendant's "proposal, provided we have a speedy and amicable resolution, is to terminate the option agreement and forfeit the $3.4m of the premium payment, with the balance returned to them." However, the email also states, "nothing stated herein should be construed in any way as indicating that CDM1 LLC . . . has repudiated the Option Agreement and/or that CDM1, LLC will not be ready, able, and willing to Close on January 4, 2019." Defendant sent emails regarding the Unit after the December 2018 email, including an email to Plaintiff on February 13, 2019, "to schedule a walk through appointment."

Finally, Plaintiff argues that the noise level of the Pump -- even when construing the evidence in Defendant's favor -- does not rise to the level of constructive eviction and therefore as a matter of law does not impair Defendant's "quiet enjoyment" of the Unit as required under Section 17.3. Even crediting Plaintiff's argument that "quiet enjoyment" requires more than the evidence Defendant offers, Plaintiff still has not demonstrated that it complied with its obligations under the Agreement as a matter of law. Section 17.3 refers to "noise that will impair Purchaser's quiet enjoyment *and use* of the Unit." (emphasis added). Plaintiff's argument fails to resolve whether the noise affects Defendant's "use of the Unit" as a matter of law.

### IV.    CONCLUSION

The parties' cross-motions for summary judgment are **DENIED**. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 71 and 77.

Dated: August 30, 2024
      New York, New York

<em>/s/ Lorna G. Schofield</em><br>
**LORNA G. SCHOFIELD**<br>
**UNITED STATES DISTRICT JUDGE**